**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**MICHAEL D. HERRIN**                                                                      **PLAINTIFF**


**VS.**                                                          **CIVIL ACTION NO: 3:20cv263-MPM-RP**


**HONORABLE TATE REEVES,**
**IN HIS OFFICIAL CAPACITY AS**
**GOVERNOR OF THE STATE OF**
**MISSISSIPPI**                                                                      **DEFENDANT**

## <u>ORDER</u>


On September 23, 2020, plaintiff filed the instant case seeking, *inter alia*, to enjoin and

declare unlawful various Covid-19 restrictions adopted by Governor Tate Reeves.  When this

court is confronted with a new case seeking injunctive or declaratory relief, its practice is to

review the allegations of the complaint to determine whether it presents claims appropriate for an

expeditious hearing and ruling.  In the course of conducting this review here, the court has

concluded that plaintiff's complaint has very serious deficiencies, many of a jurisdictional nature

which it is required to raise on its own motion.  It has prepared this order doing so.  If these

concerns are not resolved, then they will prove fatal to plaintiff obtaining any relief in this case,

since jurisdictional issues are ones which this court can not simply ignore.

This court notes parenthetically that, aside from defects in the jurisdictional allegations of

the complaint, it is extraordinarily light in supporting authority.  In so stating, this court observes

that, in spite of the fact that lockdowns affecting hundreds of thousands of businesses nationwide

have been enacted by various state and local governments, the sole authority cited by plaintiff is

*Cty. of Butler v. Wolf*, 2020 WL 5510690, at \*4 (W.D. Pa. Sept. 14, 2020), in which U.S. District

Judge William S. Stickman IV recently held that certain Covid-19 lockdown restrictions in Pennsylvania violated federal constitutional principles. This strikes this court as an extremely weak demonstration of authority under the circumstances, and the docket in *County of Butler* indicates that Judge Stickman's ruling has been appealed to the Third Circuit Court of Appeals.[1]

Regardless of the Third Circuit's eventual ruling in *County of Butler*, this court is cognizant of recent decisions of the U.S. Supreme Court which have been highly deferential towards the actions of state and local governments in dealing with the Covid-19 pandemic. Indeed, the U.S. Supreme Court has, throughout the Covid-19 crisis, shown considerable reluctance to disturb measures taken by state and local governments to respond to the crisis, even in cases filed by plaintiffs asserting well-established constitutional protections such as the one guaranteeing the Free Exercise of religion. In *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020), for example, the Supreme Court refused to overturn California state restrictions on religious services, and it reached the same result weeks later in considering restrictions enacted by the State of Nevada. *See Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020).

In his concurrence in S*outh Bay*, Chief Justice Roberts wrote that:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. That is especially true where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground.

---

[1] This court will be interested to see how the Third Circuit deals with *County of Butler* on appeal, and, it directs the parties to provide it with updates regarding this appeal.

*South Bay,* 140 S. Ct. at 1614.

Justice Roberts' words weigh heavily in this case, since plaintiff asks this court to second-guess Governor Reeves' response to the Covid-19 crisis in virtually every respect. While *Calvary Chapel* and *South Bay* were both 5-4 decisions by a sharply divided court, the important point for this case is that the Supreme Court demonstrated deference to state governments even when confronted with constitutional claims which, as discussed below, were far more powerful than the ones asserted here. Before this court can even address the merits of plaintiff's claims, however, it must first conclude that it has jurisdiction over them, and it finds serious deficiencies in the complaint in this regard. This court will presently explain those deficiencies, as it understands them, so that plaintiff can show cause why they are inapplicable or should otherwise not bar his claims in this case.

The first jurisdictional defect in the complaint relates to the manner in which plaintiff seeks relief against Governor Reeves well beyond the narrow limits permitted by the Supreme Court's Eleventh Amendment jurisprudence. For example, the complaint sues Governor Reeves in his official capacity, and yet it seeks monetary damages against him in that capacity, in clear violation of Eleventh Amendment immunity. *See Clay v. Texas Women's Univ.,* 728 F.2d 714, 715 (5th Cir. 1984)("The eleventh amendment clearly interposes a jurisdictional bar to suits against a state by private parties who seek monetary relief from the state"). For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the governmental entity he represents. *Mareina v. Foti,* 816 F.2d 1061, 1064 (5th Cir. 1987) (citation omitted). Mississippi district courts have applied this principle to official capacity claims against the Mississippi governor, *see Blakely v. Laurel Leader Call Newspaper*, 2012 WL 2064618, at *4 (S.D. Miss. May 21, 2012), report and recommendation adopted, 2012 WL

3

2064706 (S.D. Miss. June 7, 2012), and this court can discern no reason why this bar would not apply equally in this case.

While this court thus believes that it lacks jurisdiction to consider plaintiff's claims for monetary damages against Governor Reeves, the Supreme Court in *Ex Parte Young* carved out a narrow exception to Eleventh Amendment immunity for cases in which a plaintiff seeks prospective injunctive or declaratory relief against a state official in order to remedy an ongoing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). *See also City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).

The complaint in this case goes well beyond the limits allowed by *Ex Parte Young*, namely by seeking injunctive and declaratory relief partly based upon alleged past,[2] and non-ongoing, violations of law, and it improperly seeks such relief based upon violations of Mississippi state law, most notably the Emergency Management and Civil Defense Act, M.C.A. § 33-15-11(b)(17). [Complaint at 4-5]. This is a violation of Supreme Court precedent which makes it clear that *Ex Parte Young* actions exist only to remedy violations of federal, not state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)(pendent state claims are not the proper subject of an *Ex Parte Young* action).

---

[2] For example, plaintiff complains of Reeves' decision to close public schools and universities, see Complaint at 14, but this court takes judicial notice of the fact that these have since been re-opened.

4

It thus appears to this court that the complaint in this case goes well beyond the jurisdictional limits set forth in *Ex Parte Young* and *Pennhurst*, and it will limit itself to a discussion of the portion of plaintiff's claims which (properly) seek prospective injunctive or declaratory relief based upon violations of federal law. As to these claims, there remain certain glaring defects, most notably as to the requirement of standing. Article III of the Constitution limits federal court jurisdiction to actual cases or controversies, part of which requires a showing that a particular plaintiff has standing to bring the claims in question. *Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The U.S. Supreme Court has held that the "irreducible constitutional minimum" of standing consists of three elements. That is, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)(citations omitted).

Crucially, the Fifth Circuit has made it clear that "to have standing to sue under Article III, a plaintiff **must allege**" that the three constitutional requirements, quoted above, are met. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)(emphasis added). The standing requirement has traditionally represented one of the key obstacles to asserting constitutional claims in federal court. It therefore strikes this court as a rather glaring omission that there is no mention in the complaint of standing, much less an allegation that the three requirements of constitutional standing are met. As discussed below, the plaintiffs in the *County of Butler* case made such allegations, and, since plaintiff did not here, this alone renders his sole authority in this case distinguishable.

Since plaintiff's only potential remedies under *Ex Parte Young* are for prospective injunctive or declaratory relief, it should be emphasized that additional, and highly stringent,

standing requirements apply in these contexts. Indeed, the Supreme Court has made it clear that plaintiffs may lack standing to seek injunctive or declaratory relief even though they have standing to sue for damages. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03, 103 S. Ct. 1660, (1983).[3] Under U.S. Supreme Court precedent, a plaintiff seeking injunctive or declaratory relief must allege that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be "real and immediate," not "conjectural" or "hypothetical." *O'Shea v. Littleton*, 94 S. Ct. 669, 676, 38 L.Ed.2d 674 (1974). Moreover, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. *Id.* The *Lyons-O'Shea* standard is a notoriously difficult one which has proven fatal to many civil rights actions, and yet plaintiff did not even attempt to conform to it by providing proper standing allegations in his complaint.

It is apparent that, in many instances in the complaint in this case, the deficiencies relating to standing are not merely ones of omission. Indeed, numerous allegations in the complaint seem to make it affirmatively clear that the stringent standing requirements are *not* met with regard to particular claims asserted by plaintiff. For example, plaintiff complains of business shutdowns ordered by Governor Reeves, but he then proceeds to admit that his own law business was declared essential and thus spared its effects:

> 76. While Plaintiff's law office was deemed an "essential business" by the Governor's Executive Orders, his clients were restricted in their ability to travel, speak and otherwise assemble with him and his other non-essential businesses were closed without due process or compensation.

---

[3]This court notes that, although *Lyons* dealt with injunctive relief, the Fifth Circuit has held that its reasoning applies equally to declaratory relief. *See Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992).

[Complaint at 20]. In the court's view, allegations that while a particular plaintiff is not personally affected by a governmental action, someone else was, is a rather prototypical example of a fact pattern in which standing is, emphatically, not present.

A similar analysis applies to plaintiff's attempts to seek relief based on his status as a resident of a particular county and city. Specifically, plaintiff alleges in his complaint that:

> 46. Specifically, the County of Panola and the City of Batesville, of which the Plaintiff is a resident, hold, and are obligated to hold, public meetings in which the public is invited to attend, and does attend, almost always in numbers of more than ten (10) or twenty-five (25) people.

> 47. Political representatives, and candidates for political office, often hold meetings, gatherings, town hall discussions, and similar events, in order to discuss matters of general importance, including matters concerning the health, safety, and welfare of members of the community.

> 48. Defendant's Executive Orders limiting the number of individuals at public gatherings violates the freedom of association clause inasmuch as expressive advocacy cannot take place because of the Executive Orders, and it affects persons who pose no danger whatsoever to others.

[Complaint at 17]. This court regards these allegations as a clear attempt to assert a "generalized grievance," contrary to well-settled Supreme Court precedent. In *Hollingsworth v. Perry*, the Supreme Court wrote that:

> To have standing, a litigant must seek relief for an injury that affects him in a "personal and individual way." He must possess a "direct stake in the outcome" of the case. We have repeatedly held that . . . a "generalized grievance," no matter how sincere, is insufficient to confer standing. A litigant "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."

*Hollingsworth v. Perry*, 570 U.S. 693, 705–06, 133 S. Ct. 2652, 2662, (2013)(citations omitted).

The complaint in this case is replete with assertions of generalized grievances, which contend that Governor Reeves' actions harmed the public at large or a particular county of which

plaintiff is a resident. In his claim for a violation of the Fifth Amendment Taking Clause, for

example, plaintiff writes that:

> 57. The State of Mississippi, through Governor Tate Reeves' Executive Orders, took property from members of the public, and from the Plaintiffs herein, without just compensation.
> 58 The taking occasioned by the Executive Orders worked to prohibit the use of citizens' property and, therefore, caused a diminution or loss in value of that property.
> 59. The taking in this case was so onerous as to work as a direct appropriation of the property.
> 60. Property and business owners who were forced to close their businesses suffered a taking and were, therefore, obligated to bear the cost of government action without just compensation.
> 61. The Executive Orders worked to deprive numerous residents, including this Plaintiff of property interests.

[Complaint at 18-19].

In his claim alleging Fourteenth Amendment due process violations, plaintiff alleges that:

> 83. The Executive Orders deprives this Plaintiff, and residents of the State of Mississippi of fundamental property rights without due process of law, based solely upon discretion of the Defendant, which discretion is not subject to appeal rights.

[Complaint at 21].

In his equal protection claim, plaintiff alleges that:

> 88. Defendant has announced plans to begin easing restrictions previously implemented. Said plan would ease the restrictions on some counties, and not others with Plaintiff's home county of Panola being among those singled out for heightened restrictions.
> 89. The easing of restrictions in some counties, and not in other counties, is not rational and is an arbitrary exercise of the Defendant's executive power.
> 90. The Defendant's plan is nothing more than an arbitrary decision-making tool that relies on the speculations of the Defendant.
> 91. Defendant's decision not to ease restrictions on all counties impedes Plaintiff's fundamental right to use his private property without the government imposing arbitrary or irrational restrictions on the use of the property.
> 92. Defendant's actions will cause Plaintiff to be completely deprived of the use and control of his private property while businesses in other counties will be authorized to operate.

[Complaint at 22]. Plaintiff thus seeks recovery based on his status as a resident of an allegedly disadvantaged county, but this allegation is clearly insufficient to give rise to standing under relevant Supreme Court precedent.[4]

This court has reviewed each of the federal claims asserted by plaintiff, and it does not believe that any of them come close to meeting the highly stringent standing requirements set forth in decisions such as *O'Shea* and *Lyons*. It appears from plaintiff's complaint that he wishes to assume the role of a champion of the community of sorts, fighting for values of personal freedom in which he, and many others, strongly believe. While reasonable minds can differ on how laudable plaintiff's intentions in this regard are,[5] federal jurisdiction principles simply do not allow citizens to use the federal courts to vindicate rights "on behalf of the community," regardless of how noble their intentions might be.

This court notes that, while plaintiff does not mention the word "standing" or its requirements in his complaint, he does make some effort to state his personal connection to each of his claims. For example, plaintiff alleges in this complaint that:

> Despite the data, collected over six months, clearly indicating virtually no danger to children, the Governor closed all public schools and now imposed a myriad of unnecessary restrictions on both primary schools and universities. Plaintiff has one high school age child and one high functioning disabled child enrolled at the University of

---

[4] This court notes parenthetically that plaintiffs' description of the manner in which Governor Reeves' has lifted restrictions in some counties, but not others, does not comport with its understanding of the facts. Plaintiff asserts that Governor Reeves is making these decisions "arbitrarily," as if he were simply throwing a dart against a map of the state in deciding where to lift restrictions and where to continue them. By this court's understanding, however, Governor Reeves is making these decisions based on consultations with medical and epidemiological experts. If that is the case, then plaintiff's allegation that Reeves' decisions in this regard are "arbitrary and capricious" would border on the frivolous.

[5] This court notes that there are many others in the community who regard the measures which plaintiff criticizes as being essential for public safety, and many contend that they do not go far enough. It is left to elected officials such as Governor Reeves to try to weigh and balance the competing concerns in this regard, as best they can.

> Mississippi. Both have been negatively impacted by the Governor's Executive Orders concerning schools and education.

[Complaint at 14]. This appears to be the "high water mark" of plaintiff's allegations relating to standing, but, even here, he falls well short of indicating what real and immediate injury he will suffer if injunctive relief is not granted. Indeed, this court takes judicial notice of the fact that public schools and universities have now re-opened in this state, and plaintiff's own allegations in this regard are written in terms of past harms, which are not within this court's limited jurisdiction under *Ex Parte Young*.

This court has reviewed the complaint in *County of Butler*, and, in that case, there were multiple plaintiffs who represented that they were political candidates and that the state orders in question would prevent them from exercising their constitutional rights to campaign door to door. [*Butler* complaint at 9]. These allegations strike this court as providing a much stronger argument for standing than anything plaintiff has alleged here, since they alleged specific future infringements of their own constitutional rights as a result of the state actions which they challenge in the lawsuit. This is in stark contrast to plaintiff's depiction of himself in this case as simply a citizen of Panola County who is being disadvantaged, along with everyone else in the county, by Governor Reeves' orders. This is particularly true since, as noted previously, he concedes that his law practice was actually exempted from Governor Reeves' shutdown orders.

This court notes that the plaintiffs in *County of Butler* did exactly what plaintiff failed to do in this case, namely allege that the three aspects of the constitutional standing requirement are met. For example, the municipal plaintiffs in *County of Butler* alleged that:

> 63. Plaintiffs County of Butler, County of Fayette, County of Greene, and County of Washington have standing in this action for the following reasons:
> a. they have an actual injury in that they are not permitted to hold public meetings in which all residents of the County may attend and be heard on important issues of the day;
> b. all counties will suffer a substantial loss;

10

> c. their interest is concrete and particularized in that the injury set forth herein above is actual and ongoing;
> d. the Governor's Orders, and guidance relative to the easing of the stay at home restrictions, have directly caused Plaintiffs Butler County, Fayette County, Greene County, and Washington County to suffer the harm complained of herein; and,
> e. the remedy requested herein will be directly redressed by a favorable decision.
> *Taliaferro v. Darby Township Zoning Board,* F.3d 181 (3d Cir. 2006).

[*Butler* complaint at 14].  Once again, the Fifth Circuit has held that alleging that these three standing requirements are met is mandatory, and this court concludes that plaintiff has failed to comply with that requirement in this case.  This fact alone renders plaintiff's sole authority in this case clearly distinguishable, and it renders his complaint fatally defective.

Standing aside, this court notes that additional jurisdictional obstacles are presented by another aspect of the "case and controversy" requirement, namely the mootness doctrine.  In his complaint, plaintiff pre-emptively raises the issue of mootness, writing that:

> Plaintiff anticipates Governor will respond that the restrictions imposed by Executive Order have been greatly relaxed over the course of the pandemic and are set to expire on September 30, 2020, rendering this Complaint moot. This Court should take notice that these measures were originally initiated as "temporary measures" to "flatten the curve" and yet now six (6) months later, in various degrees, these measures are still in place. More importantly, any of these measures or even harsher ones, can be implemented by the mere stroke of a pen by the Governor sua sponte as and when he sees fit.

[complaint at 16].

This court's overriding impression of the mootness issue is that plaintiff has, seemingly intentionally, sought to make it impossible for it to determine which of his claims are moot and which are not.  In so stating, this court notes that plaintiff's complaint devotes almost three pages to listing various Executive Orders entered by Governor Reeves, beginning with the start of the Covid-19 emergency in March.  [Complaint at 5-7].  Plaintiff then proceeds, throughout his complaint, to object to Reeves' "Executive Orders," without making clear to exactly which orders he is referring.  It seems clear to this court that at least some of these Executive Orders are

11

now moot, such as the one closing schools, which have since been re-opened. As quoted above, plaintiff writes that "in various degrees, these measures are still in place," but it seems clear that many of these measures (such as the school closures), are not, in fact, in place at all.[6] It appears to this court that, by consciously adopting an approach of deliberate vagueness, plaintiff is hoping that this court will essentially throw up its hands and conclude that the allegations are "close enough for government work" and wave them past the mootness requirement. That is not how federal jurisdiction works, at least in this court.

This court suspects that plaintiff has raised the issue of mootness pre-emptively since it figured prominently in *County of Butler*, which appears to be, once again, his sole authority in this case. This court notes that, in finding certain Covid-19 restrictions enacted by the Governor of Pennsylvania to be unlawful, Judge Stickman applied the "voluntary cessation" doctrine to conclude that the issue of the constitutionality of certain orders which were no longer in effect were not moot. However, Judge Stickman's own description of the "voluntary cessation" doctrine was as follows:

> As the Third Circuit explained, [o]ne scenario in which we are reluctant to declare a case moot is when the defendant argues mootness because of some action it took unilaterally after the litigation began. This situation is often called "voluntary cessation," and it "will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' "

*Id.* at *18, *citing Hartnett v. Pa. State Educ. Ass'n,* 963 F.3d 301, 306 (3d Cir. 2020).

---

[6] Moreover, plaintiff's assertion that any of the measures can be re-implemented neglects the fact that, if such were to occur, it would almost certainly be in response to unfolding events in the Covid-19 crisis. Plaintiff seems to ignore the fact that the issue of the constitutionality of a particular governmental action can not be divorced from the circumstances in which it arose. Accordingly, a hypothetical school shutdown which occurred in November 2020, in response to new outbreaks, would not simply be a re-enactment of a prior school shutdown since the constitutionality of each shutdown would be considered in the context of the circumstances which led to it.

12

Thus, the "voluntary cessation" doctrine relied upon by Judge Stickman applies, on its face, only to an action taken by the defendant *after the litigation began*. The docket in *County of Butler* indicates that the case was filed on May 7, 2020, and Judge Stickman did not enter the ruling relied upon by plaintiff until September 14, 2020. Thus, Judge Stickman found that the "voluntary cessation" doctrine allowed him to consider voluntary cessations of actions which occurred during the almost four and a half months in which the case was pending. The instant case, by contrast, was not filed until September 23, 2020, and yet plaintiff complains of restrictions which, he acknowledges, were eased before this suit was filed.[7] Thus, even if this court's interpretation of plaintiff's intentions regarding the vagueness of his complaint is incorrect, he still appears to raise moot allegations even under the standards of the sole authority he offers in his complaint.

It is unclear whether plaintiff would wish to file an amended complaint in response to its order today, but, if so, then the seemingly intentional vagueness of his mootness arguments would seem to counsel against allowing it. Mootness aside, it appears that, with regard to the standing issue, plaintiff has quite openly and intentionally asserted a belief that he has the right, as a citizen of Panola County, to assert generalized grievances which he believes residents in his county hold against Governor Reeves' orders. Plaintiff makes it quite clear in his complaint that this is his intent, but this intent simply does not comport with federal standing principles. In the court's view, amended complaints are proper in cases where a plaintiff, acting in good faith, discovers new facts or initially neglected to assert claims in a manner which a court finds to be

---

[7] As quoted previously, plaintiff acknowledges that "the restrictions imposed by Executive Order have been greatly relaxed over the course of the pandemic and are set to expire on September 30, 2020," and yet he would (apparently) have this court consider the more stringent requirements which lapsed before this suit was filed.

13

excusable.  Amendments do not strike this court as appropriate when a plaintiff chooses to adopt an approach of deliberate vagueness in his complaint, seemingly in hopes of muddying the waters, or consciously adopts a basic legal theory of the case which is contrary to standing principles of which any federal litigant should be aware.

This court notes that it might be somewhat more inclined to allow an amendment of the complaint if there were some indication that his allegations had substantive merit, but that is not the case.  Plaintiff's argument that Governor Reeves' limitations on public gatherings constitutes a First Amendment freedom of assembly violation is unsupported by any authority other than the *County of Butler* decision, which is, frankly, difficult to reconcile with the Supreme Court's deferential approach in this context.  Once again, the Supreme Court has refused to disturb the Covid-19 actions taken by governors in cases involving religious gatherings, which would seem to involve greater constitutional protections than any of the assemblies discussed in plaintiff's complaint.

While plaintiff is often unclear in his complaint regarding what sort of assemblies he is referring to, he takes specific exception to Governor Reeves' restrictions on "retailers." Specifically, plaintiff alleges in his complaint that:

> 52. Should the Court find that the assembly limitations are content neutral, they are patently not tailored to serve a significant government interest nor leave open ample alternative channels of communication. The limitations vary based upon the size of the retailer for example and this limitation bears no relevance to either the virus or those most vulnerable to the virus.

[Complaint at 17-18].  Plaintiff therefore seems to regard "retail" gatherings as enjoying heightened First Amendment protection, but the law is clear that the right to associate applies only to those activities protected by the First Amendment— that is, speech, assembly, petition for the redress of grievances, and the exercise of religion.  *Roberts v. U.S. Jaycees,* 468 U.S. 609,

14

618, 104 S. Ct. 3244, 3249 (1984). It thus seems clear that plaintiff is operating under a mistakenly broad interpretation of the First Amendment right to associate, quite apart from his failure to even mention, much less distinguish, the Supreme Court's holdings in the Covid-19 church context.

Plaintiff's remaining claims strike this court as both lacking in authority and entirely unpersuasive. In his substantive due process claim, plaintiff suggests (consistent with the substantive due process standard) that Governor Reeves' actions "shock the conscience." [Complaint at 20]. For its part, however, this court finds the notion that restrictions designed to save human lives are "conscious shocking" to be absurd and not worthy of serious discussion. As to his Equal Protection claim, plaintiff appears to concede that a mere "rational basis" analysis applies, and this court cannot even discern a reasonable argument that Governor Reeves' actions are "arbitrary and capricious" under Fourteenth Amendment principles. In so stating, this court notes that the complaint itself acknowledges that Governor Reeves has both relaxed and tightened restrictions based upon his understanding of the threat posed by the pandemic at a particular time and location. While individual citizens can, and do, disagree regarding whether these actions go too far or not far enough, this court can discern no good faith argument that they are "arbitrary" or "capricious" in a constitutional sense. Finally, this court can discern no reasonable argument that Reeves' actions constitute a procedural due process violation or unlawful taking, and, as with the other claims, plaintiff cites no "real and imminent" harm which he will suffer personally if any particular orders by Reeves are not enjoined.

In sum, this court's impression of the claims asserted by plaintiff is that they are very likely without substantive merit, but that, in any event, he has failed to establish the jurisdictional requirements for even having them considered on their merits. While this court will, perhaps

15

generously, regard *County of Butler* as sufficient supporting authority to spare plaintiff the burden of paying defendant's attorneys' fees in this case, it does not intend to allow him to subject defendant to the burden of defending this case for a protracted period of time, unless he can persuade it that it has more merit than presently appears to be the case.

While the court will not dismiss the case at this time, it warns plaintiff that, having expressed its jurisdictional concerns in this order, it has no intention of addressing the merits of his claims until it has satisfied itself that these jurisdictional concerns have been met. Indeed, this court has no authority to do otherwise. This court reminds plaintiff that he is seeking an order from a federal court instructing a governor that the steps he is taking to protect the lives of his state's citizens are unlawful and must be overturned. That is an extraordinary step which raises serious federalism concerns, and the Supreme Court's decisions in the Covid-19 context seem to caution against taking it. This court further notes that protecting the health and safety of its citizens is one of the pre-eminent duties of state government, and there are views all across the political spectrum regarding whether the Covid-19 measures adopted by Governor Reeves carry out this duty effectively. For its part, this court's duty is not to referee these disputes, but simply to decide whether the actions are constitutional. To make that determination, however, this court must first have jurisdiction over a case.

In light of the foregoing, it appears to this court that the complaint in this case is defective on multiple levels, but it will give plaintiff an opportunity to persuade it otherwise before dismissing it. In doing so, this court's intent is not to give plaintiff a second chance to take the care in researching and preparing his complaint which he should have done in the first place. Rather, this court is merely giving plaintiff an opportunity to demonstrate that this court's conclusions regarding his existing complaint are erroneous. This court directs that plaintiff

16

submit any arguments he wishes to provide on this issue within two weeks of this order, and

defendant is directed to respond within two weeks of the docketing of plaintiff's brief. Plaintiff

may file a reply brief within a week of defendant's response.

So ordered, this, the 25th day of September, 2020.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**